STEVEN VACTOR,                                  )
                              Plaintiff,        )
                                                )
        vs.                                     )   Civil Action No. 12-210
                                                )
STEVEN LONGSTRETH, Unit Manager;               )   Magistrate Judge Maureen P. Kelly
STEVEN BENCO; MS. PETRUS, Unit                  )
Manager; MS. HAWKINBERRY, CCPM;                 )   Re:  ECF No. 40
BRIAN COLEMAN, Supt.; DONALD                    )
SEATON, DATS Counselor; MR. ERIC                )
ARMEL; MR. HAYNES; MS. RIGGIN;                  )
MS. COLL; MR. MACKEY et al., PA                 )
PAROLE BOARD, SUED IN THEIR                     )
INDIVIDUAL AND OFFICIAL                         )
CAPACITIES,                                     )

## OPINION AND ORDER

**KELLY, Magistrate Judge**

Presently before the Court is a Motion to Dismiss [ECF No. 40] filed on behalf of all

Defendants seeking to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  For the following reasons, the Motion to Dismiss is granted.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initiated this prisoner civil rights action on February 21, 2012, against

Defendants Benco, Coleman, Hawkenberry, Longstreth, Petrus and Seaton, with an initial

Complaint alleging that he was wrongfully denied parole upon completing his minimum

sentence.  [ECF No. 4, p. 3].  Construing Plaintiff's initial Complaint broadly, Plaintiff asserted

substantive and procedural due process claims under the Eighth and Fourteenth Amendments to

1

the United States Constitution.  Plaintiff also made reference to state law claims for defamation, "administration act and mandamus."  [ECF No. 4, p. 3].   Defendants subsequently filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim.  [ECF No. 19].  Plaintiff responded by filing a first Amended Complaint [ECF No. 26], which was followed shortly by Defendants' renewed Motion to Dismiss. [ECF No. 27].  Plaintiff thereafter sought leave to file a second Amended Complaint [ECF No. 29] ("Second Amended Complaint"), which, in light of Plaintiff's pro se status and in an abundance of leniency, was granted. [ECF No. 35].  Plaintiff's Second Amended Complaint [ECF No. 37] is the subject of the instant Motion to Dismiss.

Plaintiff appears to allege three claims: (1) substantive and procedural due process violations with regard to the denial of parole under "Act 95"; (2) the issuance of a retaliatory misconduct in violation of Plaintiff's First Amendment rights; and (3) Eighth and Fourteenth Amendment claims arising out of the failure of the Pennsylvania Board of Probation and Parole (the "Parole Board") to grant him an annual hearing regarding his eligibility for parole. In support of his claims, Plaintiff has attached over 75 pages of exhibits, comprising requests to staff members, communication with Department of Corrections employees, as well as his history of grievances and misconducts relating to the claims at issue.

### A.  "Act 95" Denial of Parole Claim

Plaintiff's first claim arises out of what he identifies as "Act 95," a bill proposed by Pennsylvania State Senator Stewart Greenleaf.[1]   [ECF No. 37, p. 7, ¶ 37]. Using this description, the Court, as well as Defendants, understand Plaintiff to be alleging a claim under the 2010

---

[1] See, http://senatorgreenleaf.com/legislative-update.htm, ("Greenleaf Bills Enacted – Act 95 of 2010 – Prison Overcrowding, Sanctions for Parole Violators, Risk Assessment in Sentencing and Prison Oversight Boards - The bill authorizes the parole board to grant parole to an inmate whose only requirement for parole is completion of programming and provides for a graduated sanctioning system for parole violators"). This bill was subsequently enacted  into law in conjunction with the 2010 amendments to the Pennsylvania Board of Probation and Parole statute (set forth at 61 P.S. § 6137, as amended by the Judiciary And Judicial Procedure--Prisons And Parole-- Omnibus Amendments, 2010 Pa. Legis. Serv. Act 2010-95 (S.B. 1161) (West)).

amendments to the Pennsylvania Board of Probation and Parole statute (set forth at 61 P.S.

§ 6137, as amended by the <u>Judiciary And Judicial Procedure--Prisons And Parole--Omnibus</u>

<u>Amendments</u>, 2010 Pa. Legis. Serv. Act 2010-95 (S.B. 1161) (West)).  Pursuant to the amended

terms of Section 6137:

> (1) The board may parole subject to consideration of guidelines established under 42 Pa.C.S. § 2154.5 (relating to adoption of guidelines for parole) and may release on parole any inmate to whom the power to parole is granted to the board by this chapter, except an inmate condemned to death or serving life imprisonment, whenever in its opinion:

> (i) The best interests of the inmate justify or require that the inmate be paroled.

> (ii) It does not appear that the interests of the Commonwealth will be injured by the inmate's parole.

> (2) Parole shall be subject in every instance to the Commonwealth's right to immediately retake and hold in custody without further proceedings any parolee charged after his parole with an additional offense until a determination can be made whether to continue his parole status.

> (3) The power to parole granted under this section to the board may not be exercised in the board's discretion at any time before, but only after, the expiration of the minimum term of imprisonment fixed by the court in its sentence or by the Board of Pardons in a sentence which has been reduced by commutation.

> **(3.1)(i) Following the expiration of the inmate's minimum term of imprisonment, if the primary reason for not paroling the inmate is the inmate's inability to access and complete prescribed programming within the correctional institution, the board *may* release the inmate on parole with the condition that the inmate complete the prescribed programming while on parole.**

> (ii) This paragraph shall not apply to offenders who are currently serving a term of imprisonment for a crime of violence as defined in 42 Pa.C.S. § 9714 (relating to sentences for second and subsequent offenses) or for a crime requiring registration under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders).

61 Pa. Cons. Stat. Ann. § 6137 (West)(emphasis and italics added).

Plaintiff contends that after the expiration of his minimum period of incarceration, the amendments to Act 95 require his release regardless of whether he has completed any prescribed programming. Plaintiff alleges that he provided Defendants a copy of "Act 95," requesting that he be placed in an outpatient community program so that he could complete therapy required for parole. Plaintiff alleges that his request was denied, as were all grievances arising out of the denial, and that he was informed that he would "max out" his sentence. [ECF No. 4, pp. 3-4]. Plaintiff contends that this is a violation of his Fourteenth Amendment due process and liberty rights.

**B. First Amendment Retaliation Claim**

Plaintiff also asserts a claim for a First Amendment violation arising out of alleged retaliation he contends occurred as a result of filing the initial Complaint in this action. Plaintiff alleges that on May 14, 2012, he was wrongfully issued a "misconduct" for violating a "no-contact separation order." Plaintiff has attached the relevant documents regarding the misconduct and its adjudication as exhibits to his Second Amended Complaint. [ECF No. 37-6].

The no-contact order was issued while he was incarcerated at SCI-Pittsburgh in July 2008, and forbid contact between Plaintiff and his daughter and her mother. The misconduct form indicates that on May 14, 2012, SCI-Fayette security personnel were contacted by the Victim Advocate Office with a report that on March 3, 2012, Plaintiff placed a four minute call to his daughter and attempted 15 additional calls in violation of the no-contact order. [ECF No. 37-6, p.11]. Given the serious nature of the allegations, a misconduct was issued by Defendant Haynes, and the resulting disciplinary hearing was presided over by Defendant Mackey. Id. After assessing the credibility of the witnesses, Defendant Mackey determined that Plaintiff had received notice of the no-contact order and therefore willfully violated the order. A penalty of

20 days in Disciplinary Custody was imposed. [ECF No. 37-6]. Plaintiff appealed the decision of the Hearing Examiner to the Program Review Committee, comprised of Defendant Hawkinberry, as well as Major Tammy Cesarino and Major Scott A. Nickelson. The Program Review Committee determined that the evidence was sufficient to support Defendant Mackey's determination of guilt and therefore denied Plaintiff's appeal. [ECF No. 37-6, p. 22]. Plaintiff filed a second level appeal, which was reviewed by Defendant Armel. Defendant Armel denied Plaintiff's appeal, finding no errors in the adjudication below. [ECF No. 37-6, pp. 20-21].

Plaintiff alleges that the misconduct was issued on May 14, 2012, in retaliation for filing his initial Complaint. Plaintiff contends that six Defendants were served with the original Complaint on May 10, 2012, and they immediately retaliated against him by issuing the misconduct. Plaintiff contends the misconduct was a "misuse of authority," resulting in a denial of due process, both with regard to notice of his underlying misconduct and with regard to the denial of review for parole. [ECF No. 37, p. 7, ¶ 38].

In support of his retaliation claim, Plaintiff points to United States Marshal's Form 285 - Process Receipt and Return, which was filed as to each of the original Defendants in this action, and attached as exhibits to his Second Amended Complaint. The forms indicate that the Complaint was served by mail on May 16, 2012; two days *after* Plaintiff received his misconduct. Plaintiff contends, however, that the forms were altered to make it appear that service by mail was executed on May 16, 2012, rather than May 10, 2012 (two days before he received his misconduct). [ECF No. 37, p. 7; ECF No. 47, p. 11]. The record reflects that Plaintiff initially prepared the forms, with his name and address and the name and address of each defendant to be served. Plaintiff then submitted the forms to the Court to be forwarded to the United States Marshal's Office. [ECF No. 37-8, pp. 6-11]. The docket confirms that on May

9, 2012, the Court received Plaintiff's prepared forms along with service copies of the original Complaint, and that it forwarded these items to the United States Marshal's Office for service. [ECF No. 9; and see, text entry dated 5/9/2012]. The bottom of the form was completed by the United States Marshal's designee and indicates that service was executed on May 16, 2012, as shown in the "Remarks" section of the form and as reflected on the docket of this matter. [ECF Nos. 11-16]. The date of mailing appears to have been changed; however, "the Form USM-285 is a five-copy form set designed as a control document for process served by a U.S. Marshal or designee."[2] After initial preparation by a plaintiff, the forms, as internal control documents, are processed and filed by the United States Marshal's designee, and not by any party in an action. Accordingly, the change in date was made by the United States Mashal's designee and reflects that the documents were mailed by her on May 16, 2012, two days *after* the issuance of the misconduct.

### C. Eighth and Fourteenth Amendment Claims Related to the Scheduling of Parole Hearings

Plaintiff further alleges that his due process and Eighth Amendment rights have been violated because parole hearings have not been scheduled annually. [ECF No. 37, p. 8]. Plaintiff's parole history is set forth in the exhibits to his Complaint and is summarized by Defendant Hawkinberry, a Pennsylvania Department of Corrections Parole Manager. Defendant Hawkinberry indicated that Plaintiff's access to hearings was dependent upon his completion of available prescribed rehabilitation programs and/or by simply submitting a written request to the appropriate office.

> Inmate Vactor is grieving the fact that the Parole Board and the agents are refusing to give him a Parole Hearing and is claiming that this is a violation of his Constitutional Rights.

---

[2] http://www.usmarshals.gov/process/usm285.htm

Inmate Vactor received a Board Action while at SCI-Graterford on December 8, 2010, which denied him parole and stated, "you are to be reviewed upon completion of programming as indicated by recent DOC assessment." Inmate Vactor failed State Intermediate Punishment (SIP) at SCI-Pittsburgh in October 2008, after he was being staffed for removal and signed out of the program prior to the vote sheet returning. He was then transferred to SCI-Graterford and was placed in their TC (Jericho) on August 11, 2010. He was discharged from it on November 12, 2010 for his unwillingness to change or be invested in his recovery. He was then transferred to SCI-Fayette and was placed in the TC on April 22, 2011. On June 17, 2011 he was placed on a Last Chance Intervention for not using his headphones while using a musical instrument. In the evening on the same night, he was observed playing his guitar and singing loudly. He was subsequently discharged from the TC on June 20, 2011 for his actions. Inmate Vactor has yet to reapply for the TC and is currently marked as refusing the program. On August 8, 2012, inmate Vactor sent Institutional Agent, Ms. Riggin an *Inmate Request to Staff Member* asking for an informal meeting and stating that he is eligible for a parole hearing. She responded by stating that he needs to complete the program and the Board will see him. As stated on his Board Action, he may file an application for parole/reparole no sooner than 1 year after the date the last decision denying parole/reparole was recorded. Since the Board Action is over a year old, inmate Vactor is eligible to file an application requesting to be seen, which can be done by writing to the address that is listed at the top of his Board Action.

[ECF No. 37-8, 2; and see, 37-7, p. 16]. Based upon the documentation provided by Plaintiff as attached to his Second Amended Complaint, it appears that Plaintiff's last hearing was in 2010, and that he has been informed repeatedly of the requirement that he successfully complete an available rehabilitation program for future parole consideration. In addition, Plaintiff was informed on September 12, 2011, December 12, 2011, and again on August 27, 2012, that if he wanted a parole hearing, he needed to submit a written request to the address indicated on his Board Action report. Id.; and see, ECF No. 37-7, p. 12. Plaintiff claims, however, that the denial of an automatic annual hearing violates his constitutional rights.

Plaintiff seeks injunctive relief in the form an order requiring his immediate parole; a declaratory judgment that his constitutional rights have been violated and compensatory and punitive damages. [ECF No. 37, p. 9].

Defendants have filed a comprehensive Motion to Dismiss, raising a myriad of defenses that appear on the face of the Second Amended Complaint and the exhibits attached thereto. [ECF No. 40]. Plaintiff has filed a brief in opposition to the Motion to Dismiss. [ECF No. 47]. Defendants' Motion to Dismiss the Second Amended Complaint is now ripe for review.

## II.    STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must read the complaint in the light most favorable to the non-moving party and all well-pleaded, material allegations in the complaint must be taken as true. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  In addition, the court is not limited to evaluating the complaint alone; it can also consider documents attached to the complaint, matters of public record, indisputably authentic documents, Delaware Nation v. Pennsylvania, 446 F.3d 410, 413 n. 2 (3d Cir. 2006), documents that form the basis of a claim, Lum v. Bank of America, 361 F.3d 217, 221 n. 3 (3d Cir. 2004) (*abrogation on other grounds recognized by* In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300, 323 n. 22 (3d Cir. 2010)), and "documents whose contents are alleged in the complaint and whose authenticity no party questions," even though they "are not physically attached to the pleading...." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002).   Upon review, a complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397–98 (3d Cir. 2000).

The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In Twombly, the Supreme Court held that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Supreme Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678. Only "a complaint that states a plausible claim for relief [will] survive[ ] a motion to dismiss." Id. at 679.

In Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit  provided a two-part test to determine whether a claim survives a motion to dismiss. "First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'  The plaintiff must show 'the allegations of his or her complaints are plausible.  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief.' [This] 'plausibility' determination will be 'a context – specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

Several exhibits have been attached to the Plaintiff's Second Amended Complaint. However, consideration of these exhibits by the Court does not convert Defendants' motion to dismiss for failure to state a claim into a motion for summary judgment. <u>Pryor v. National Collegiate Athletic Association</u>, 288 F.3d 548, 560 (3d Cir. 2002) ("... certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an Federal Rule of Civil Procedure 56 motion for summary judgment"); <u>and</u> <u>see</u>, <u>Spencer v. City of Philadelphia</u>, No. 09-123, 2012 WL 1111141 (W.D. Pa. Apr. 2, 2012).

With particular relevance to Defendants' Motion to Dismiss, Plaintiff has attached his grievances and misconduct history to the Second Amended Complaint. Plaintiff is on notice of the contents of each document and, therefore, the exhibits to the Second Amended Complaint may be relied upon without converting the motion to dismiss into a motion for summary judgment. <u>Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

In addition, if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).

## III.   DISCUSSION

### A.   Plaintiff has failed to establish a cause of action for denial of parole.

#### 1.   Requested relief in the form of immediate parole is not available.

Plaintiff has filed this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging the violation of his rights under the Constitution of the United States. Plaintiff alleges

that although he has not completed any of the programming prescribed by the Parole Board for his release, he is entitled to parole pursuant to "Act 95" because he has served his minimum sentence. Plaintiff alleges that the failure to release him violates his due process rights under the Fourteenth Amendment. Plaintiff requests, *inter alia*, "that this Court … [i]ssue an Injunction Ordering the Defendants to Immediately Arrange Parole Release AND to Expunge the PA DOC's Treatment Program." [ECF No. 37, p. 9].

Initially it must be determined whether Plaintiff's claim for release is cognizable under Section 1983, for "challenges to parole decisions are frequently in the exclusive domain of habeas corpus." Perry v. Pennsylvania Dept. of Corr., 441 F. App'x 833, 836 (3d Cir. 2011)(citing, Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001) (holding that the appellant was required to challenge the execution of his sentence, inclusive of an adverse denial of parole by the Parole Board, under 28 U.S.C. § 2254)). Because the essence of Plaintiff's claim for release is a challenge to the duration of confinement, it is not the proper subject of a Section 1983 civil rights action. See, Preiser v. Rodriguez, 411 U.S. 475, 484, 494, (1973) (habeas corpus is available as an attack upon the legality of custody and the traditional function of the writ is to secure release from illegal custody).

Further, under Heck v. Humphrey, 512 U.S. 477, 486–87 (1994), a state prisoner cannot make a cognizable claim under Section 1983 for an alleged unconstitutional conviction or to attack the validity of incarceration unless the underlying conviction has been reversed. Heck v. Humphrey, 512 U.S. 477, 486–87 (1994) (citation omitted). In Wilkinson v. Dotson, 544 U.S. 74 (2005), the United States Supreme Court clarified the Heck rule, finding "that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to

conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81–82. Thus, to the extent Plaintiff requests release from prison in the form of immediate parole, that relief is not available in a Section 1983 action and is Heck-barred. See Preiser, 411 U.S. at 484; and see Wilkinson, 544 U.S. at 81–82. Accordingly, Plaintiff's claim for immediate parole is dismissed with prejudice.

**B. Plaintiff has failed to establish claims for the denial of procedural and substantive due process.**

Plaintiff's claims for declaratory and compensatory relief arising out of allegations that he was prevented from participating in a community based therapeutic program do not necessarily demonstrate the invalidity of his continued confinement and therefore are not Heck-barred. These allegations may be interpreted as an attack on the conditions of his confinement, as opposed to the duration of confinement, and therefore are amenable to relief pursuant to Section 1983. Frye v. McVey, 349 F. App'x 671, 674 (3d Cir. 2009). However, while these claims are not barred by Heck, Plaintiff fails to present facts sufficient to state a plausible claim for which relief may be obtained and therefore, Plaintiff's due process claims arising out of the denial of parole are dismissed.

Plaintiff alleges that Defendants denied him due process in violation of the Fourteenth Amendment to the United States Constitution. The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Procedural due process is violated only if the inmate has a liberty interest in parole. However, the United States Supreme Court has held "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979). Accordingly, there is no right to parole

based in federal law; if Plaintiff has a protected liberty interest in the grant of parole, it must derive from the Pennsylvania parole statute. <u>Newman v. Beard</u>, 617 F.3d 775, 783 (3d Cir. 2010) (citing, <u>Sandin v. Conner</u>, 515 U.S. 472, 483–84 (1995)).

Plaintiff cannot rely upon Pennsylvania law as a basis for relief. The relevant Pennsylvania statute, 61 Pa. C.S.A. § 6137, does not create a mandatory expectation of parole but, rather, it has been determined that release on parole is a matter of grace. <u>Rogers v. Pennyslvania Board of Probation and Parole</u>, 724 A.2d 319 (Pa. 1999). <u>See also</u>, <u>Burkett v. Love</u>, 89 F.3d 135, 139 (3d Cir. 1996) (parole is not a constitutionally protected liberty interest under Pennsylvania law). While "states may under certain circumstances create liberty interests which are protected by the Due Process Clause," <u>Sandin v. O'Connor</u>, 515 U.S. 472 (1995), the Pennsylvania Supreme Court has long held that the denial of parole does not implicate a constitutionally protected liberty interest because parole is a discretionary matter, granted to a prisoner who has demonstrated the ability to function in society as a law-abiding citizen. <u>Coady v. Vaughn</u>, 770 A.2d 287 (Pa. 2001). The 2010 amendment to Section 6137 relied upon by the Plaintiff does not alter the fundamentally discretionary nature of the grant of parole: "if the primary reason for not paroling the inmate is the inmate's inability to access and complete prescribed programming within the correctional institution," the parole board "*may* release the inmate on parole" and "permit the inmate to complete the prescribed programming while on parole." 61 Pa.C.S.A. § 6137 3.1(1) (italics added). Absent any indication of legislative intent to the contrary, the plain meaning of the word "may" implies discretion, <u>United States v. Rogers</u>, 461 U.S. 677, 706 (1983), and the language employed does not affect the Board's authority to determine whether an inmate is sufficiently rehabilitated such that he will be permitted to serve

the remainder of his sentence outside the prison walls on parole.   Since there is no liberty interest in parole, Plaintiff's procedural due process claim is dismissed.

While his Second Amended Complaint is not a model of clarity, Plaintiff appears to also claim that his substantive due process rights have been violated. "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the procedures used to implement them.'" Zimmerman v. Burch, 494 U.S. 113, 125 (1990).  Official conduct violates substantive due process if it "shocks the conscience…" Newman v. Beard, 617 F.3d at 782.  This standard "encompasses only the most egregious official conduct." Id.

Applying this standard, the United States Court of Appeals for the Third Circuit rejected substantive due process challenges to state parole board decisions in Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001), and Hunterson v. DiSabato, 308 F.3d 236, 246–47 (3d Cir. 2002).  In Coady, the prisoner insisted that the decision of the Pennsylvania Board of Probation and Parole violated substantive due process because the board used constitutionally impermissible criteria to deny parole, applied erroneous descriptions of the conduct underlying his offense, and considered false information. The Court of Appeals rejected the prisoner's claims on the grounds that "federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met *if there is some basis for the challenged decision*." Coady, 251 F.3d at 487 (emphasis added).

In Hunterson v. DiSabato, the United States Court of Appeals for the Third Circuit reversed an order granting a writ of habeas corpus to a New Jersey inmate who claimed that a parole board decision imposing a five-year future eligibility term was arbitrary, capricious, and an unreasonable abuse of discretion. As the Court explained:

this type of constitutional challenge to a state [parole] proceeding is not easily mounted. We have made clear that the federal courts, on habeas review, are not to second-guess parole boards, and the requirements of substantive due process are met if there is some basis for the challenged decision.... The relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times conscience shocking or deliberately indifferent.

Hunterson, 308 F.3d at 246–47 (citations and internal quotation marks omitted).

In this case, the exhibits attached to Plaintiff's Second Amended Complaint are facially sufficient to establish that the decision not to release Plaintiff was in complete accordance with statutory directives. The provision relied upon by Plaintiff provides that release to a community based program *may* occur "if the primary reason for not paroling the inmate is the inmate's inability to access and complete prescribed programming within the correctional institution." 61 Pa.C.S. § 6137 3.1(1). However, the exhibits to Plaintiff's Second Amended Complaint establish that prescribed programming was available but that Plaintiff chose not to participate or, indeed, failed program goals resulting in his removal. In addition, upon removal, Plaintiff was permitted to obtain reinstatement upon application. See, e.g., ECF No. 37-1, pp. 4-5, 37-2, p. 2 ("[d]uring the approximate hours of 2200-2330 on 6/17/11. Inmate Vactor was observed to be playing his guitar and singing loudly in his cell in violation of Block Rule #20 quiet time from 2100-600 and his Last Chance Intervention. Inmate discharged from Therapeutic Community on 6/20/11. Inmate informed that he could re-apply in 60 days by writing SATSS Benko").

It is clear that Plaintiff presented officials with numerous legitimate reasons for exercising discretion to deny release on parole to complete prescribed programming in his home community. Furthermore, it is the Parole Board, and not Defendants, that renders the ultimate determination of whether Plaintiff receives parole. As such, Plaintiff's substantive due process

claim warrants dismissal on the merits. Because it is clear that leave to amend would be futile, the claim is dismissed with prejudice.

**B.     Plaintiff has failed to make out a cause of action for retaliation**

**1. First Amendment**

Plaintiff next alleges that Defendants retaliated against him by filing a false misconduct after learning that Plaintiff had commenced this lawsuit. It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the United States Constitution, which is actionable under Section 1983. <u>Rauser v. Horn</u>, 341 F.3d 330 (3d Cir. 2001); <u>White v. Napoleon</u>, 897 F.2d 103, 112 (3d Cir. 1990). However, the mere allegation of retaliation is insufficient to establish such a claim. In order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action" at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. <u>Rauser</u>, 241 F.3d at 333 (adopting <u>Mount Healthy Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977)).

The crucial third element, causation, requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. <u>See</u> <u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007); <u>Krouse v. American Sterilizer Co</u>., 126 F.3d 494, 503–04 (3d Cir. 1997)). Once a plaintiff has made his prima facie case, the burden then shifts to the defendant to prove by a preponderance of the evidence that he or she "would have made the same decision absent the protected conduct for reasons reasonably related to

penological interest." <u>Rauser</u>, 241 F.3d at 334 (incorporating <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987)); <u>Verbanik v. Harlow</u>, No. 09-448, 2012 WL 4378198 (W.D. Pa. Sept. 25, 2012).

Even assuming Plaintiff could satisfy the first two elements of a prima facie retaliation claim, Plaintiff cannot establish the third required element, causation. To infer a causal connection between his Complaint and the misconduct charged against him, Plaintiff alleges that the Complaint was served on Defendants two days before the issuance of the misconduct. However, the United States Marshal Form 285 prepared in conjunction with service of Plaintiff's Complaint, as well as the docket entries in this matter, reflect that the Complaint was not served until two days *after* the misconduct was issued. [ECF No. 37-8, pp. 6-11; ECF Nos. 11-16]. Plaintiff's protestation to the contrary, the docket carries a presumption of accuracy and the entry of the date of service on May 16, 2012, is accepted by this Court as sufficiently trustworthy. <u>U.S. v. Helwig</u>, 159 F.2d 616, 617 (3d Cir. 1947) ("It is fundamental that the record imports verity."); <u>United States v. Aviles</u>, 623 F.2d 1192, 1198 (7th Cir. 1980) ("the presumption of regularity attends official acts of public officers and the courts presume that their official duties have been discharged properly.") Further, the form at issue is "a control document for process served by a U.S. Marshal or designee" and is not executed or signed by Defendants or their counsel but is exclusively maintained by the United States Marshal's office. <u>See</u>, *fn* 1, <u>supra</u>. Thus, Plaintiff cannot establish that the service of his initial Complaint, occurring two days *after* the issuance of the misconduct, has a causal relationship upon which his retaliation claim may be predicated.

The exhibits to Plaintiff's Second Amended Complaint also establish that Defendants would have made the same decision with regard to the misconduct for reasons related to a legitimate penological interest. The exhibits confirm that the misconduct was issued to

discipline Plaintiff for his repeated failure to obey an outstanding "no contact" order. [ECF No. 37-6, pp. 11, 20-22]. The misconduct states:

> [o]n May 14 2012 P Behr from the victim advocate office contacted FYT Security office … on a no contact order issue[d] to inmate Vactor HM_0070 9ie;) ant violation. Vactor hm-0070 was given a no contact order by SCIP office on July 15 2008. On the above date and time Vactor violation this order by placing a call on 3/3/2012 to phone number [xxx-xxx-xxxx] 4 min in duration he also has (15) other calls attempts in violotation of this order

[ECF No. 37-6, p. 11 (*sic passim*)]. Given the serious nature of the allegations, including Plaintiff's 15 other attempts to violate the no-contact order; the matter was referred to a Hearing Examiner for disposition. Defendant Mackey determined that based upon the evidence presented to him, the report prepared by Defendant Haynes was "more credible." Defendant Mackey therefore concluded that Plaintiff had received the no-contact order prior to making the telephone calls at issue and was guilty of the charges. [ECF No. 37-6, p. 12]. Plaintiff's first and second level appeals were denied, with findings that Plaintiff had received and failed to obey the no-contact order, and that he failed to present any arguments of merit on appeal. [ECF No. 37-6, p. 20-22].

The finding of guilt is sufficient to show that Defendants' issuance of the misconduct was reasonably related to a legitimate penological interest and that Plaintiff would have been charged regardless of any protected activity. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002) (affirming summary judgment in favor of defendants on retaliation claim when "the quantum of evidence" concerning the prisoner's misconduct showed that he would face disciplinary action regardless of his protected activity), Rauser, 241 F.3d at 334; see also; Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (stating that a finding of "some evidence" in support of a disciplinary determination "checkmates" a retaliation claim).

A review of the exhibits attached to Plaintiff's Second Amended Complaint reveals that Plaintiff cannot maintain a cause of action for the violation of his First Amendment rights based upon alleged retaliation. Therefore, Plaintiff's claim is dismissed. Further, because it is apparent on the record that permitting amendment of his claim would be futile, Plaintiff's First Amendment retaliation claim is dismissed with prejudice.

### 2. Eighth and Fourteenth Amendment Claims

Plaintiff's claims arising from the misconduct issued on May 14, 2012, also appear to encompass allegations that his rights arising under the Eighth and Fourteenth Amendments have been violated; first, because his classification was changed from a level 2 inmate to a level 4 inmate, which Plaintiff alleges was "cruel and unusual punishment striking down parole eligibility," and, second, that the use of legal standards of proof in a disciplinary hearing is "unfair," because the hearings are "one-sided." [ECF No. 37, pp. 7-8].

With regard to Plaintiff's Eighth Amendment claim, it is true that the Eighth Amendment protects an inmate from being incarcerated beyond the term of his sentence. See, Sample v. Diecks, 885 F.2d 1099, 1108 (3d Cir. 1989). However, Plaintiff has not alleged that he has been incarcerated beyond his maximum sentence, and therefore any change in his parole eligibility status does not state a claim arising under the Eighth Amendment. Id.; see, also, Sharard v. Berks County, No. 12-2393, 2012 WL 6838952 *8-9 (M.D. Pa. Dec. 6, 2012)(Eighth Amendment claim dismissed with prejudice where denial of parole does not result in incarceration beyond expiration of sentence). Because there is no constitutional right to be conditionally released before the expiration of a valid sentence, and further amendment of his complaint would be futile, Plaintiff's Eighth Amendment claim arising out of the denial of parole is dismissed with prejudice.

Plaintiff's Fourteenth Amendment due process claim challenging the standard of proof required at a misconduct hearing is also dismissed with prejudice. It is certainly true that inmates have the right not to be deprived of a protected liberty interest without due process of law. However, the threshold question presented by Plaintiff's claim is whether the sanction imposed, twenty-days of disciplinary confinement, impacted a constitutionally protected liberty interest sufficient to invoke additional procedural protections. In this regard, the United States Supreme Court has held that prison conditions deprive a prisoner of a protected liberty interest when they result in "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995). Applying this test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In making this determination, the Supreme Court looked at two basic factors: (1) the amount of time the prisoner was placed into disciplinary segregation; and (2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive. After reviewing these two factors, the Supreme Court concluded that thirty days in disciplinary detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

In the case at issue, Plaintiff cannot show that his twenty-day disciplinary confinement impacted a constitutionally protected liberty interest entitling him to additional due process protection. Courts within this Circuit and the Commonwealth of Pennsylvania, applying Sandin in various actions, have found no protected liberty interest implicated by placement in disciplinary custody for longer amounts of time, and therefore no requirement that inmates be

afforded additional due process protection. See Smith v. Mensinger, 293 F.3d 641, 652 (3d Cir. 2003) (seven months disciplinary confinement did not implicate liberty interest); Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997) (fifteen months in administrative custody did not deprive plaintiff of a liberty interest); Young v. Beard, 227 F. App'x 138, 141 (3d Cir. 2007) (holding that absent allegations showing that conditions in disciplinary confinement for 930 days imposed atypical and significant hardship on an inmate in relation to ordinary incidents of prison life, the inmate was not entitled to additional procedural protections during prison disciplinary proceedings).

Accordingly, to the extent Plaintiff alleges that he was entitled to some additional procedural due process protections with regard to his misconduct hearing, he has not and cannot make out a Fourteenth Amendment claim. Plaintiff's claim is dismissed with prejudice.

**C. Plaintiff cannot establish a claim for the denial of parole hearings.**

Plaintiff's final claim arises out the alleged denial of annual parole hearings to determine his eligibility for release. Plaintiff alleges that prison officials are objectively cruel and deliberately indifferent to the "conditions of [his] confinement" because annual hearings have not occurred. The Court construes these allegations as a denial of Plaintiff's Eighth Amendment rights. However, in the absence of allegations of incarceration beyond his maximum sentence, Plaintiff has made no factual allegations which plausibly would lead to the conclusion that his Eighth Amendment rights have been violated. Plaintiff's Eighth Amendment claim regarding the denial of parole will be dismissed. It is apparent from the exhibits attached to the Second Amended Complaint that any attempt to cure the deficiencies in Plaintiff's Eighth Amendment claim would be futile; accordingly this dismissal is with prejudice.

Plaintiff also alleges that the failure to schedule an annual parole hearing constitutes a denial of his procedural due process rights, presumably arising under the Fourteenth Amendment. However, as set forth *supra*, procedural due process is violated only if the inmate has a liberty interest in parole, which does not exist under federal constitutional or state law. The Pennsylvania Supreme Court has considered the nature of a prisoner's interest in parole arising under state law and has held "[a] prisoner has only a right to apply for parole at the expiration of his or her minimum term and to have that application considered by the Board. If the Board denies the prisoner's application, the period of confinement can be the maximum period of incarceration specified by the sentencing court, although the prisoner may continue to reapply with the Board for parole. See 42 Pa.C.S. § 9756; 61 P.S. §§ 331.21-331.22." <u>Rogers v. Pennsylvania Bd. of Prob. & Parole</u>, 724 A.2d 319, 326 (Pa. 1999)(internal citations omitted). <u>See</u>, <u>also</u>, <u>Long v. Pennsylvania Bd. of Prob. & Parole</u>, No. 08-0943, 2009 WL 249468 (M.D. Pa. Feb. 2, 2009) (because there is no constitutional or inherent right of a convicted person to be conditionally released before expiration of a valid sentence, an inmate is entitled only to consideration for parole).

Plaintiff does not allege that he properly submitted a renewed application for parole in the time frame at issue. Indeed, as is made clear by the exhibits attached to his Second Amended Complaint, after the 2010 denial of parole, Plaintiff failed to submit an application for parole, even after repeatedly being instructed to do so. [ECF No. 37-8, p.2; <u>and</u> <u>see</u>, ECF No. 37-7, pp. 12, 16]. Accordingly, because a Section 1983 action must be predicated upon state action and the record establishes that fault for the failure to conduct an annual parole hearing lies with Plaintiff, his Fourteenth Amendment claim must fail. Because it is clear that it would be futile to grant leave to amend, dismissal of this claim will be with prejudice.

**D. Plaintiff cannot maintain a claim for supervisory liability or against Defendants in their official capacities.**

Defendants also seek dismissal of certain of Plaintiff's claims on additional grounds, in particular the immunity provided each of the Defendants pursuant to the Eleventh Amendment, as well as the absence of any allegations of personal involvement on the part of Defendant Coleman. These grounds will be briefly addressed.

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332 (1979).

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages, are persons within the meaning of Section 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70–71 and n. 10 (1989). For the foregoing reasons, all damages claims against the Parole Board and against the individual defendants in their official capacities are dismissed.

With regard to Plaintiff's claims against the individual Defendants, federal civil rights claims brought under Section 1983 cannot be premised on a theory of respondeat superior. Rode

v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained by the United States Court of Appeals for the Third Circuit in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.    Defendants contend that Plaintiff's claims against Defendant Coleman arise solely from his supervisory capacity or as a result of receiving or responding to Plaintiff's complaints and, thus, are insufficient to state a claim.

Plaintiff's only factual allegation with respect to Defendant Coleman is that on December 15, 2011, Plaintiff forwarded a letter to Defendant Coleman regarding the dismissal of Plaintiff's grievances to be paroled pursuant to "Act 95." [ECF No. 37, p. 5, ¶ 27].  However, failure to review or respond to a grievance is insufficient to establish personal involvement. See Rode, 845 F.2d at 1208; Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

Because Defendant Coleman's alleged involvement is insufficient to establish personal involvement for liability under Section 1983, Plaintiff's Complaint is dismissed in its entirety against him.[3]

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss Second Amended Complaint [ECF No. 40] is granted.  Furthermore, as it is clear that it would be futile to grant leave to amend, dismissal of Plaintiff's Second Amended Complaint is with prejudice.

## ORDER

AND NOW, this 20th day of May, 2013, upon consideration of Defendants' Motion to Dismiss Amended Complaint, and the briefs filed in support and opposition thereto, it is HEREBY ORDERED that the Motion to Dismiss is GRANTED.

It is FURTHER ORDERED that the Clerk shall mark this action closed.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he must do so within

---

[3] Defendants have also raised qualified immunity, as well as the unavailability of mandamus, declaratory relief, compensatory and punitive damages as additional grounds for dismissal of certain of Plaintiff's claims.  Given the disposition of the Motion to Dismiss, these additional grounds for relief are not addressed and, therefore, are denied without prejudice.

thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk

of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.


BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE



cc:     All counsel of record via CM/ECF

        Steven Vactor
        HM-0070
        SCI Fayette
        Box 9999
        50 Overlook Drive
        Labelle, PA 15450-0999